IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDIE LAREECE PITTMAN, | ) |
| Plaintiff, | ) Civil Action No. 2:11-cv-00842 |
| v. | ) Judge Mark R. Hornak |
| NIGHT FOREMAN BOB; JAMES AUSTIN COMPANY, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court is the second Motion to Dismiss Plaintiff's Complaint, ECF No. 37, filed by Defendant James Austin Company ("James Austin"). The Court has reviewed and considered the Complaint filed by Plaintiff Eddie Lareece Pittman ("Pittman"), ECF No. 4, as deemed amended by this Court, ECF No. 31, and the various briefs offered in support of and in opposition to the Motion to Dismiss. ECF Nos. 21-22, 36-37, 40, 43. For the reasons that follow, James Austin's Motion is GRANTED.

### I. BACKGROUND

When reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all of the factual allegations in the Complaint as true and draws all reasonable inferences in the Plaintiff's favor. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Therefore, for purposes of disposition of James Austin's Motion to Dismiss, the essential facts are as follows.

Plaintiff Pittman, acting pro se, brings suit against James Austin and Defendant "Night Foreman Bob" ("Bob"). Though Pittman oddly seeks to impose civil liability on the defendants via the United States Criminal Code, his Complaint (read most generously in his favor) asserts, on its face, two types of sexual discrimination claims – quid pro quo and hostile work environment – pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. § 2000e-2 (2006); Compl. 1, ECF No. 4 ("Jurisdiction in this Court is based on: Employment and Federal Laws related to Harassment (sexual). . . of Quid Pro Quo and Inappropriate Touching. . . [b]oth of which combined to form an unlawful work environment for the Plaintiff."). James Austin has also assumed that this Court will interpret Pittman's Complaint to include a sexual assault claim under Pennsylvania law. Def.'s Rule 12(b)(6) Mot. to Dismiss Pl.'s Am. Compl. ¶ 5, ECF No. 37 (hereinafter Mot. to Dis.).[1]

The Gregg Staffing Employment Agency assigned Pittman to work at James Austin in July 2009.[2] Compl. 2. Pittman's shift ran from 5:00 pm to 2:30 am, and his immediate supervisor's name was "Barb." *Id.* Defendant Bob, one of two night-shift foremen, worked alongside Pittman. *Id.*

Beginning in his second week of work at James Austin, Pittman began to notice Bob taking "an unusual liking" to him in that when Pittman would walk out of the warehouse to take a break, Bob would "say something like 'Eddie, you alright?'" *Id.* Then, at the end of the second week and into the third, when Pittman's duties required him to work on one of James Austin's machines, Bob would "put himself in a position to see something relative to one of the

---

[1] As noted *infra*, the facts in the record reflect that Bob is deceased, ECF No. 7. Thus, no motion to dismiss has been filed on his behalf, and Pittman has advanced no factual or legal basis for the substitution of another party in his stead.

[2] Pittman's Complaint is unclear as to the exact nature of his duties at James Austin.

2

machines... causing [Pittman's] body to make contact with... Bob's body." *Id.* Bob would also bring his face into "very close proximity" with Pittman's face, making Pittman uncomfortable. *Id.* at 3.

During Pittman's fourth week with James Austin, Bob grabbed Pittman by the shoulders, stating "You're lucky I like you... I like you because you're so big!" Compl. 3. Pittman confided in another employee his concerns regarding Bob's behavior; this employee informed Pittman that "everyone in the Plant was aware of [Bob's] history of getting too close to other male employees." *Id.*

Pittman knew that he should have addressed Bob's conduct, but instead he chose to remain silent. *Id.* This lack of action stemmed from Pittman's claimed fear of jeopardizing his chances for permanent employment at James Austin. *Id.* at 3-4. Consequently, he asserts that he did not report Bob's behavior to a supervisor nor did he confront Bob directly. *Id.*

At the end of July 2009, James Austin informed Pittman that it no longer needed his services, after an issue occurred involving boxes "at the line where [Pittman] was working."[3] Compl. 4. Pittman claims that his behavior during this event was influenced by a combination of sinus irritation caused by a chemical spill, which occurred earlier that evening, and his general state of distress over Bob's offensive actions. *Id.* Therefore, Pittman "feels he was not to blame" for the box incident. *Id.*

The procedural posture of this case bears noting, as the pleadings followed a somewhat circuitous path, leading to this Court's reliance on multiple documents to ascertain the relevant factual allegations necessary for disposition of James Austin's Motion to Dismiss. Pittman filed an EEOC charge on November 29, 2009 against James Austin, asserting only racial

---

[3] Pittman's Complaint is notably vague regarding the exact nature of this "issue."

discrimination. Def. Memo. of Law in Support of its Rule 12(b)(6) Mot. to Dismiss Pl's Am. Compl. (hereinafter Mot. to Dis. Br.), Ex. A., ECF No. 36-1. The EEOC issued a right to sue letter on July 23, 2010, but Pittman did not bring suit against James Austin until nearly one (1) year later on June 27, 2011, when he filed a Motion in this District Court requesting in forma pauperis status. ECF No. 1. Attached to Pittman's Motion was his Complaint, which contained allegations of sexual, not racial, discrimination. ECF No. 1-1. But Pittman demanded a specific amount of unliquidated damages in his Complaint and such demands violate Local Rule of Civil Procedure 8. ECF No. 1-1. Accordingly, the Honorable Nora Barry Fischer ordered Pittman to file a new Complaint which complied with this local rule. ECF No. 3. Pittman then filed an amended document on July 11, 2011, which became his original Complaint for the purposes of the District Court's Electronic Filing System. ECF No. 4.

Pursuant to 28 U.S.C. § 1915(d) (2006) and Federal Rule of Civil Procedure 4(c)(3), a United States Marshal served Pittman's Complaint on James Austin on August 23, 2011. ECF No. 6. However, the Marshal did not achieve service on Bob, listing "8-23-11 The Defendant in this case is deceased" on the process receipt. ECF No. 7.

On September 13, 2011, James Austin moved for dismissal, arguing, among other items, that Pittman had failed to (1) file his suit within the mandatory ninety (90) day statutory filing period mandated by Title VII and (2) exhaust his administrative remedies in that Pittman only reported a claim of racial discrimination to the EEOC, not sexual discrimination.[4] ECF No. 12. In his Response to James Austin's Motion, filed on November 17, 2011 as a "Reply," Pittman averred new facts that were absent from his Complaint and provided copies of emails that demonstrated he had engaged in a conversation with James Austin's Human Resource Manager

---

[4] Pittman's Complaint in this Court does not allege racial discrimination.

4

in August of 2009. Mot. to Dis. Br. Ex. B., ECF No. 36-3; Pl.'s Reply to "Def.'s Mem. of Law in Supp. of its Rule 12(b)(6) Mot. to Dis. Pl.'s Compl." (hereinafter Pl's Resp), Ex. I-II, ECF No. 22., 22-1. The information in these emails and Pittman's new factual allegations bore directly on James Austin's administrative arguments. James Austin replied on December 2, 2011. ECF No. 27.

Meanwhile, Pittman's case was transferred to this Court on December 1, 2011. In an effort to provide clarity and focus to the record, the Court issued an Order for James Austin to Show Cause as to why the Court should not consider Pittman's Complaint amended by the following relevant factual assertions from Pittman's November 17, 2011 response.

> 1. After filing his EEOC complaint alleging racial discrimination, Plaintiff contacted James Austin Company ("James Austin") and disclosed to a James Austin representative that Plaintiff had been sexually harassed by Defendant Night Foreman Bob. Reply to "Def's. Mem. of Law in Supp. of its Rule 12(b)(6) Mot to Dis. Pl.'s Compl." 4-7; Emails dated Aug. 5, 2009 & Aug. 11, 2009 attached to Reply to "Def's. Mem. of Law in Supp. of its Rule 12(b)(6) Mot to Dis. Pl.'s Compl."
>
> 2. Plaintiff informed the EEOC after filing his original complaint of the alleged sexual harassment. The EEOC delayed in responding to Plaintiff's new allegation and, eventually, failed to take any action regarding this claim. Reply to "Def's. Mem. of Law in Supp. of its Rule 12(b)(6) Mot. to Dis. Pl.'s Compl." 5-7.
>
> 3. Plaintiff was never interviewed by the EEOC in person and was, in fact, forbidden to make any direct contact with the EEOC investigator. Reply to "Def's. Mem. of Law in Supp. of its Rule 12(b)(6) Mot. to Dis. Pl.'s Compl." 4.
>
> 4. Though the EEOC mailed Plaintiff's right-to-sue letter on July 26th, 2010, Plaintiff did not receive the letter in a timely fashion, due to his relocating first from Pittsburgh to Orono, Maine, then to Raleigh, North Carolina, and finally to Columbia, Missouri, between January, 2010, and December, 2010. *Id.* at 8.
>
> 5. During this time, Plaintiff tried to contact the EEOC's Pittsburgh office to check on the status of his claim. However, this office does not permit complainants to receive status updates over the phone. *Id.*

> 6. Plaintiff received a copy of his right-to-sue letter only after requesting an update of the status of his complaint via a letter to the EEOC's Pittsburgh office. *Id.*
>
> 7. Plaintiff diligently filed this suit within 90 days of receiving his right-to-sue letter. *Id.*

Order to Show Cause 1-2, ECF No. 31. James Austin did not object to the inclusion of the above alleged facts to Pittman's pleading and again moved for dismissal on March 30, 2012. Def.'s Resp. to Ord. to Show Cause ¶ 5, ECF No. 34. It is this renewed Motion to Dismiss Pittman's Complaint, which is now deemed as including the above amendments, that is the subject of the Court's opinion.

## *II.    LEGAL STANDARD*

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to a heightened standard of fact pleading. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (internal quotations omitted).

Building upon the landmark United States Supreme Court decisions of *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit recently explained that a district court must take three steps to determine the sufficiency of a complaint:

> First, the Court must "take[e] note of the elements a plaintiff must plead to state a claim." Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a Court should assume their veracity and then determine whether they plausibly give rise to an entitlement for

6

relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 674, 679 (internal citations omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claim(s) presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *See Iqbal*, 556 U.S. at 679. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.*; *see also Fowler*, 578 F.3d at 210-11.

The Court may not dismiss a complaint merely because it appears unlikely or improbable that a plaintiff can prove the alleged facts or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 556. Generally speaking, a complaint that provides adequate facts to establish "how, when, and where" will survive a motion to dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Services, Inc.*, 346 F. App'x 774, 776 (3d Cir. 2009). In short, a motion to dismiss should not be granted if a party alleges facts which could, if established at trial, entitle him to relief. *Fowler*, 578 F.3d at 213.

### III. DISCUSSION

**FOR THE PURPOSES OF RESOLVING JAMES AUSTIN'S MOTION TO DISMISS, PITTMAN EXHAUSTED HIS ADMINISTRATIVE REMEDIES AND FILED SUIT WITHIN THE MANDATORY NINETY (90) DAY PERIOD.**

As an initial matter, James Austin asserts that Pittman's sexual discrimination suit cannot proceed because he has failed to (1) exhaust his administrative remedies when he filed a charge of racial, not sexual, discrimination against James Austin with the EEOC, and (2) sue within the

7

statutorily-mandated ninety (90) day period after receipt of his right to sue letter. The Court will address these potential bars to Pittman's suit before reaching the substance of his Title VII claims.

In general, a plaintiff must exhaust all available administrative remedies before seeking relief in federal court. *See Angelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999) ("[I]t is a basic tenet of administrative law that a plaintiff should timely exhaust all administrative remedies before seeking judicial relief."). In the context of a Title VII claim, a plaintiff must comply with the procedural requirements of section 2000e-5, including filing a charge with the EEOC. *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413-14 (3d Cir. 2010). The scope of any resulting civil action is typically limited by "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. . . ." *Id.* at 414 (quoting *Hicks v. ABT Assoc., Inc..*, 572 F.2d 960, 966 (3d Cir. 1978)).

However, a plaintiff's later reasonable attempt to amend a charge of discrimination may excuse an expansion of his claims at trial if the EEOC improperly rejected the proposed amendment. *Hicks*, 572 F.2d at 964-65 (3d Cir. 1978). For example, in *Hicks*, the plaintiff filed two charges of racial discrimination with the EEOC but later filed a Complaint in federal court alleging sexual discrimination against his employer. *Id.* at 962-63. The district court granted judgment in favor of the employer on the sexual discrimination claim because the plaintiff had only filed race-based discrimination charges with the EEOC. *Id.* The Third Circuit reversed because the plaintiff "indicated that he had tried to make further charges, but that the EEOC would not accept them." *Id.* at 964. The *Hicks* plaintiff also stated that he was never contacted by the EEOC investigator, which would have provided another means for him to notify the Commission of his sexual discrimination claims. *Id.* at 966. When the EEOC fails to follow its

own procedures, the *Hicks* court emphasized, "[t]he individual employee should not be penalized by the improper conduct of the Commission." *Id.* at 964-65.

Here, Pittman alleges circumstances similar to those faced by the *Hicks* plaintiff. Pittman states that he attempted to inform the EEOC of a subsequent sexual discrimination charge, but the EEOC delayed in responding to his new allegation and, eventually, failed to take any action. Pl.'s Resp. 5-7. Pittman was, additionally, "not allowed" to make any direct contact with the EEOC investigator to inform the Commission of his sex-based claims. *Id.* at 4. As the Court is required to assume these facts are true at this stage in the proceedings,[5] Pittman's quid pro quo sexual harassment and hostile work environment claims should not be dismissed on administrative grounds, since any failure to include these charges in the investigation was due to a claimed lack of diligence or cooperation on the part of the EEOC, not Pittman.[6]

Turning to the timing of Pittman's filing of his suit, Title VII requires that a claimant asserting violations of the statute's protections bring a civil action against his employer within ninety (90) days of receipt of an EEOC right to sue letter. *Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 176 (3d Cir. 1999) (citing 42 U.S.C. § 2000e-5(f)(1)). For a pro se plaintiff, this means that the time for filing his complaint begins to run upon the actual date of receipt of the right-to-sue letter by the plaintiff. *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 & 239 n. 1 (3d Cir. 1999).

---

[5] To be clear, while the Court is obligated to assume them to be true, it makes no finding that they are in fact true.

[6] The Court also finds that no prejudice to James Austin results by allowing Pittman's sexual discrimination claims to proceed for purposes of resolving its Motion to Dismiss because, while the EEOC charge is the primary vehicle for notice to the employer of a potential suit against it, James Austin received notice of Pittman's sexual discrimination claims when he disclosed his concerns regarding Bob's conduct to James Austin's Human Resource Manager via an email on or before August 5, 2009. *Hoffman v. R.I. Enterprises, Inc.*, 50 F. Supp. 2d 393, 401 (M.D. Pa. 1999); Def. Resp. Br. Ex. I, II. In any event, the Court neither finds nor holds that the EEOC actually inhibited Pittman's efforts to amend his charge, only that the assumes this to be the case, for the reasons stated.

Regarding the date of receipt in this case, the Court is mindful that whether a certain alleged fact is supported by evidence in the record is an inappropriate inquiry when resolving a motion to dismiss. *See Fowler*, 578 F.3d at 213. Instead, the Court must focus on the facts as pled by Pittman. *Id.* Therefore, for the purposes of this Memorandum Opinion, Pittman sued James Austin within ninety (90) days of receiving his EEOC right to sue letter, despite the letter possessing an issuance date eleven months prior to the filing of his suit, because his actual receipt of this letter was allegedly delayed due to his moving first to Maine, then to North Carolina, and finally to Missouri during 2010. Pl.'s Resp. 8. During this time, Pittman claims that he diligently attempted to update his address and check on the status of his charge with the EEOC, to no result. *Id.* While the passage of eleven (11) months is a long enough time to cast some real doubt on Pittman's claim of non-receipt, given that there are no contradictory assertions or evidence in the pleadings at this time that would establish an actual different date of receipt of his right to sue letter, the Court is at this point constrained to credit these factual allegations and allow Pittman's claims to survive dismissal on the ninety (90) day limitation issue. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that when deciding a motion for summary judgment, a court should not accept alleged facts that are "blatantly contradicted by the record").[7]

---

[7] The Court notes that James Austin contends that Pittman is a "sophisticated complainant" who has filed multiple Title VII lawsuits and is therefore well aware of his duty to comply with the administrative requirements of the statute via the EEOC. *See, e.g., Pittman v. Hunt Construction Group*, 564 F.Supp.2d 531 (E.D. N.C. 2008); Compl., Pittman v. Stocks, No. 4:06-cv-0110-F (E.D.N.C. May 30, 2006), ECF No. 3; Compl., Pittman v. Revlon HQ's, No. 4:06-cv-00134-FL, (E.D.N.C. Oct. 27, 2006), ECF No. 3. James Austin also alleges that "Plaintiff has been twice previously warned by another court about the importance of properly exhausting his administrative remedies, resulting in the dismissal of his complaints before that court." Def.'s Reply to Pl.'s Resp. to Def.'s Br. in Support of its 12(b)(6) Mot. to Dismiss 6. Indeed, though this Court must accept Pittman's allegations as true at this stage, his description of an apparently grossly negligent staff of the Pittsburgh Office of the EEOC – a staff which, even after alleged, repeated contact via telephone and letter, (1) refused to update Pittman's address, (2) failed to mail his right to sue letter to the proper address, (3) did not permit Pittman to speak to an investigator, and (4) failed to accept Pittman's amended charge of sexual discrimination – strains to its limits the plausibility standard of *Iqbal* and *Twombly*. The Court is also troubled by the fact that Pittman informed a James Austin representative in August that he felt he had been subjected to sexual harassment, but then, in November, signed off on an EEOC charge that only

**PITTMAN DOES NOT STATE A CLAIM OF EITHER QUID PRO QUO SEXUAL HARASSMENT OR HOSTILE WORK ENVIRONMENT UNDER TITLE VII.**

Turning to the substance of Pittman's Title VII claims, even when taking the alleged facts of Pittman's Complaint and its amendments as true and drawing all reasonable inferences in his favor, he does not assert facts that support a claim of quid pro quo or hostile work environment sexual discrimination. Regarding the former, to establish a quid pro quo claim a plaintiff must plead that his harasser created a conditional paradigm whereby submission or rejection of the unwanted sexual advances would, or did, affect the plaintiff's employment. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 27 (3d Cir. 1997); *Hurley v. Atlantic City Police Dep't.*, 174 F.3d 95, 133 (3d Cir. 1999) (Cowen, J., concurring in part and dissenting in part). As the Third Circuit stated in *Robinson v. City of Pittsburgh*,

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual. . . .

120 F.3d 1287, 1296 (3d Cir. 1997) (quoting 29 C.F.R. § 1604.11(a)(1), (2)) (abrogated on other grounds). Accordingly, to assert a valid quid pro quo claim, the plaintiff must allege that a threat existed "which was carried out," instead of simply pleading he was subjected to "offensive conduct in general." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998). In other words, the plaintiff must plead a causal nexus between his response to the unwanted sexual advances and a later decision that affected a term of his employment. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281-84 (3d. Cir. 1999).

---

asserted racial discrimination. In this case, Pittman's claims do not survive dismissal regardless of his administrative actions, so the Court need not resolve these issues. However, the Court reminds and warns Pittman that the EEOC process is not to be taken lightly and that a failure to abide by the administrative requirements of Title VII in any future cases, such as they may arise, could result in the dismissal of his claims on that basis alone.

After a thorough review of Pittman's Complaint, its amendments and supporting briefs, the Court concludes that he fails to plead a viable claim of quid pro quo sexual harassment. Pittman's description of Bob's conduct does not include assertions that Bob ever conditioned, either implicitly or explicitly, Pittman's continued employment at James Austin upon his submission to sexual advances. Nor does Pittman contend that his response, or lack thereof, to Bob's alleged actions actually resulted in his termination from James Austin. Instead, Pittman simply lists several instances of behavior that he found offensive, while at the same time admitting that his own behavior regarding an "issue with boxes on the line" caused his termination.[8] Compl. 4. Nowhere in Pittman's pleadings or supporting filings does he assert that Bob forced upon him, or carried out, a "this for that" scheme, which resulted in his termination. Pittman therefore cannot maintain a quid pro quo claim of sexual discrimination under Title VII against James Austin, and, accordingly, James Austin's Motion to Dismiss is granted as to this claim.

Turning to Pittman's allegations of a hostile work environment, for unwanted conduct to give rise to a hostile work environment, such conduct must be so extreme as to amount to a change in the terms and conditions of the plaintiff's employment. *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

---

[8] James Austin also argues that Pittman's quid pro quo claim fails because Bob did not have the authority to affect Pittman's employment at the company since Pittman pleads that a woman named "Barb" was his direct supervisor. Such supervisory authority is a factor in determining the validity of a quid pro quo claim. *See, e.g., Klopfenstein v. National Sales and Supply, LLC*, No. 07-4004, 2008 WL 2331948, at *7 (E.D. Pa. June 5, 2008) (holding plaintiff's quid pro quo claim failed, in part, because the alleged harasser was not plaintiff's supervisor and played no role in the decision to terminate plaintiff); *Baker v. Boeing Helicopters*, No. Civ.A.C1-3565, 2004 WL 1490358, at *6 (E.D. Pa, June 30, 2004) (granting summary judgment in favor of defendant because plaintiff's co-worker "lacked the potential to alter Plaintiff's employment"). Pittman replies that Bob, as a foreman, possessed supervisory authority in that "Bob would have a role in who [James Austin] needed. . . Bob dictated the Plaintiff's variety of duties more than anyone else. Thus, at least indirectly, Defendant Bob's influence would be a factor." Pl.'s Resp. Br. 5. However, the exact nature of Bob's supervisory status is not relevant to the Court's analysis, because, even assuming Bob possessed actual or apparent authority over Pittman, Pittman still fails to allege that Bob conditioned Pittman's continued employment at James Austin upon his submission to sexual advances or that Bob actually effected Pittman's termination.

When evaluating the suspect conduct, a court may consider such factors as the frequency of the discriminatory conduct, its severity, and its nature, i.e., whether it is physically threatening or humiliating, as opposed to a mere offensive utterance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Id.* at 21. In this manner, a trial court "ensure[s] that Title VII does not become trivialized as a general civility code" for the workplace. *Faragher*, 524 U.S. at 788 (internal quotations omitted).

Here, the alleged facts do not lead to a plausible inference that Pittman was subjected to a work environment at James Austin that was so pervasively offensive or abusive that it may be said to have affected his employment conditions. Pittman's allegation that Bob would ask if he was "alright" when leaving the warehouse would in no way be offensive to a reasonable person. Pittman's remaining assertions of the perceived invasion of his "personal space" when Bob would oversee his work on occasion during Pittman's brief period at James Austin and Bob's comment expressing that he liked Pittman also do not rise to the level of an abusive atmosphere.[9] While those behaviors may have made Pittman "uncomfortable," an uncomfortable situation is not in itself tantamount to a hostile situation for the purposes of Title VII.[10] Comp. 3. Most importantly, as discussed with regard to Pittman's quid pro quo claim, the pleading is insufficient to support a claim that Bob's behavior was both legally hostile, and a substantial motivating

---

[9] This remains so even if any weight is given to Pittman's allegations that an unidentified co-worker at an unidentified time and place, told Pittman that it was, in essence, common knowledge that Bob was gay. Compl. 3. Such a vague, generalized, unsupported allegation of the now-deceased Bob's sexual orientation does not make Pittman's claims any more plausible for *Twombly/Iqbal* standards. They do nothing to "nudge" Pittman's assertions over the *Iqbal* line. *Iqbal*, 556 U.S. at 680.

[10] At one point in his briefs, Pittman even characterizes Bob's actions toward him as "favoritism." Pl.'s Reply to "Def.'s Mem. At Law in Supp. Of its Rule 12(b)(6) Mot. To Dismiss Pl.'s Am. Compl." 3. The Court is hard pressed to see how favoritism, even if unwanted, would create a pervasively abusive work atmosphere.

cause of Pittman's termination. Pittman himself asserts that a combination of factors, including sinus irritation, caused him to react to an issue in the workplace in what James Austin believed was an unacceptable manner. Other circumstances beyond Bob's unwanted conduct were needed for Pittman to react as he did, strongly indicating that Bob's conduct was not so offensive as to affect a term of Pittman's employment. Therefore, since Pittman's pleadings lack factual assertions plausibly supporting the existence of pervasively sexually offensive or abusive working conditions, this claim is also dismissed.[11]

**TO THE EXTENT PITTMAN BRINGS CLAIMS OF SEXUAL DISCRIMINATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA"), THOSE CLAIMS ARE ALSO DISMISSED**

Pittman does not on the face of his Complaint seek to impose liability on James Austin via the PHRA. However, in his various responses to James Austin's Motion, he mentions filing a claim of sexual discrimination with the Pennsylvania Human Relations Commission ("PHRC"). *See, e.g.* Pl.'s Resp. 6; Pl.'s Reply Br. 4. Therefore, this Court will construe Pittman's Complaint to contain allegations of quid pro quo and hostile work environment sex discrimination in violation of the PHRA. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d. Cir. 2003).

The requirements for stating a claim under the PHRA substantively mirror those of Title VII and, therefore, should be interpreted identically. *Western v. Commw. of Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001). This is true for both quid pro quo and hostile work environment claims. *See, e.g., Kryeski v. Schott Glass Tech., Inc.*, 626 A.2d 595, 598 (Pa. Super.

---

[11] James Austin also argues that Pittman cannot maintain his claims against it because Pittman's allegations do not establish the requisite "co-employer liability." Since Pittman fails to establish viable Title VII claims under *Iqbal* and *Twombly*, the Court need not plumb the depths of this argument, which hinges on the assertion that only the Gregg Staffing Employment Agency, not James Austin, could "exercise control over the terms and conditions" of Pittman's employment. *Ware v. Ball Plastic Container Corp.*, 432 F. Supp. 2d 434, 439 (D. Del. 2006). Regardless, the Court is not nearly as certain as James Austin that this argument would succeed on its merits, as Pittman plainly pleads that James Austin informed Gregg Staffing that his services were no longer needed. Causing the termination of an employee, even a temporary one hired through an agency, would seem to demonstrate an exercise of some control over that employee's terms and conditions of employment.

Ct. 1993) (looking to federal precedent interpreting Title VII with regards to quid pro quo claims to determine if plaintiff stated a valid quid pro quo claim under the PHRA); *Hoy v. Angelone*, 691 A.2d 476, 480 (Pa. Super. Ct. 1997) (using Title VII precedent to analyze a hostile work environment claim under the PHRA).

Accordingly, as Pittman does not allege a cognizable claim of quid pro quo sexual harassment or hostile work environment under Title VII, such claims also fail under the PHRA. Therefore, to the extent Pittman asserts such claims under this Pennsylvania state law, they are dismissed with prejudice.

### TO THE EXTENT PITTMAN ALLEGES ADDITIONAL STATE LAW CLAIMS, THE COURT DECLINES TO EXERCISE JURISDICTION OVER SUCH CLAIMS

At the outset, the Court notes that Pittman does not specifically bring a state law claim of sexual assault against Bob nor seek to impose vicarious liability for Bob's conduct on James Austin. Rather, James Austin has assumed that the Court would construe his Complaint to contain such claims and, accordingly, requests that the Court decline jurisdiction over such matters.

A federal court should decline to exercise supplemental jurisdiction, 28 U.S.C. § 1367 (2006), over claims arising under state law where "the federal claims are no longer viable, absent extraordinary circumstances." *Shaffer v. Bd. of Sch. Dir. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (internal quotations omitted). Considering that Pittman's claims arising under Title VII cannot be maintained, and the Court does not find that any extraordinary circumstances exist, the Court declines to exercise jurisdiction over any state law claims that

could be inferred (beyond the PHRA allegations) from Pittman's Complaint and supporting documents.[12]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Eddie Lareece Pittman's sexual discrimination claims arising under Title VII against Defendant James Austin are dismissed with prejudice. To the extent that Pittman brings claims of quid pro quo and hostile work environment arising under the PHRA, those claims too are dismissed with prejudice.[13] To the extent that Pittman's Complaint could be construed to contain additional claims arising under state law, the Court declines to exercise jurisdiction over these claims. An appropriate order will enter.

Mark R. Hornak
United States District Judge

Dated: August 17, 2012

cc: All Counsel of Record

---

[12] To reiterate, the Court does not hold that such state law claims exist, or are even pled, but only that if they are pled, the Court declines to exercise jurisdiction over them.

[13] Given that (1) Pittman's allegations have already been given the broadest possible reading, (2) he has been effectively excused for the reasons stated for asserting claims beyond the narrow scope of his EEOC charge and filing his federal suit nearly one (1) year later, (3) his Complaint has already been refiled, and then also deemed amended once, and (4) the *Twombly/Iqbal* analysis has been applied with the lightest of touches consider his *pro se* status, the Court concludes that any further amendment would, by any measure, be futile.